IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

GIL BAUMGARTEN,                        §
                                       §
              Plaintiff,               §
                                       §
v.                                     §
                                       §        CIVIL ACTION NO. H-05-1854
CITIGROUP, INC., CITIGROUP             §
401(K) PLAN, PLANS                     §
ADMINISTRATION COMMITTEE               §
OF CITIGROUP,                          §
                                       §
              Defendants.              §

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff, Gil Baumgarten, filed this action for breach of contract in state district court against defendants, Citigroup, Inc., Citigroup 401(k) Plan, and the Plans Administration Committee of Citigroup, who removed it to this court asserting that plaintiff's action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, <u>et seq.</u> (ERISA).[1] Pending before the court are Defendants' Motion to Dismiss (Docket Entry No. 3) and plaintiff's Motion for Leave to Amend Complaint (Docket Entry No. 13). For the reasons explained below, defendants' motion to dismiss will be granted; and plaintiff's motion for leave to amend complaint will be granted in part and denied in part.

-----

[1]See Defendants' Notice of Removal, Docket Entry No. 1, and Plaintiff's Original Petition and Request for Disclosure, Exhibit A attached thereto.

## I.  **Factual Allegations**

On or about April 17, 2003, plaintiff was a participant in the Citigroup 401(k) Plan (the Plan) sponsored by Citigroup, Inc. and administered by the Plans Administration Committee of Citigroup, Inc.  The Plan was subject to ERISA.  Prior to April 17, 2003, the Plan allowed for acquisition of American Express (AXP) stock through the Amex Fund.  On that date, without any notice to plaintiff, defendants liquidated plaintiff's position in AXP stock (2,684 shares).  Subsequently, defendants transferred proceeds from the sale of plaintiff's AXP stock into the Citi Institutional Liquid Reserves Fund.  Following sale of his AXP shares, plaintiff filed a claim with the Plan administrator requesting that the sale be reversed.  Plaintiff's claim was denied, as was his appeal from that denial.

Plaintiff filed this action in state district court asserting breach of contract based on the defendants' alleged failure to provide him notice that the Amex Fund would be eliminated.[2] Defendants timely removed the action to this court.[3]  Plaintiff now seeks leave to file a first amended complaint to add claims for benefits and breach of fiduciary duty under ERISA.[4]

---

[2]See Plaintiff's Original Petition, Exhibit A attached to Docket Entry No. 1, pp. 3-5, ¶¶ 10-15.  See also Plaintiff's First Amended Complaint, Docket Entry No. 11, pp. 3-5, ¶¶ 9-15.

[3]Notice of Removal, Docket Entry No. 1.

[4]See Plaintiff's First Amended Complaint, Docket Entry No. 11, and Memorandum in Support of Motion for Leave to Amend Complaint, Docket Entry No. 13.

## II.   Defendants' Motion to Dismiss

Defendants argue that plaintiff's breach of contract claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted.

## A.   Standard of Review

A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom Cloud v. United States, 122 S.Ct. 2665 (2002).  The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  Id.  "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Swierkiewicz v. Sorema N.A., 122 S.Ct. 992, 998 (2002) (quoting Hishon v. King & Spalding, 104 S.Ct. 2229, 2232 (1984)).

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

Id. at 997 (quoting Scheuer v. Rhodes, 94 S.Ct. 1683, 1686 (1974)). See also Conley v. Gibson, 78 S.Ct. 99, 102 (1957) ("[A] complaint

should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

## B.   Analysis

Citing 29 U.S.C. § 1144(a), defendants argue that plaintiff's breach of contract claim fails to state a claim for which relief may be granted because it is a claim that concerns the plaintiff's failure to receive employee benefits, which is preempted by ERISA.[5]

### 1.   Law of ERISA Preemption

Preemption is addressed in two sections of ERISA:  29 U.S.C. § 1132(a) and § 1144(a).  See Aetna Health Inc. v. Davila, 124 S.Ct. 2488, 2495 (2004) (To further its goal, "ERISA includes expansive pre-emption provisions . . . which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'").

### (a)   Section 1132(a):  Complete Preemption

Preemption under § 1132(a), often called "complete preemption," is relevant to determining jurisdiction.  Complete preemption occurs when federal law so completely preempts an entire area of law that the state cause of action is entirely displaced by federal law.  Ellis v. Liberty Life Assurance Company of Boston,

---

[5]Defendants' Motion to Dismiss, Docket Entry No. 3.

-4-

394 F.3d 262, 276 & n.34 (5th Cir. 2004), cert. denied, 125 S.Ct. 2941 (2005).  "Section 502 [1132(a)], by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief, regardless of how artfully pleaded as a state action."  Id. (quoting Giles v. NYLCare Health Plans, Inc., 172 F.3d 332, 337 (5th Cir. 1999)).  Complete preemption permits removal to federal court because the cause of action arises under federal law.  Id.  Section 1132(a) -- ERISA's civil enforcement mechanism -- provides in relevant part as follows:

> (a) Persons empowered to bring a civil action
> A civil action may be brought—
>
> (1) by a participant or beneficiary—
>
>> (A) for the relief provided in subsection (c) of this section [concerning requests to the administrator for information], or
>>
>> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
>
> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this titled [breach of fiduciary duty];
>
> (3) by a participant, beneficiary, or fiduciary
>
>> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or
>>
>> (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a).

(b)   Section 1144(a):   Conflict Preemption

Preemption  under  § 1144(a),  often  referred  to  as  "conflict preemption,"  constitutes  a  defense  to  state  law  claims.   See id. Claims  preempted  under  § 1132(a)  are  necessarily  preempted  under § 1144(a).   Section 1144(a) provides as follows:

> Supersedure; effective date
>
> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.  This section shall take effect on January 1, 1975.

29 U.S.C. § 1144(a).


2.   Preemption of Plaintiff's Breach of Contract Claim

Plaintiff  does  not  dispute  that  state  law  claims  related  to ERISA  benefit  plans  are  preempted.   Nor  does  he  dispute  that  his breach  of  contract  claim  is  for  an  alleged  breach  of  an  ERISA-governed  Plan.   Instead,  plaintiff  argues  that  both  the  Original Petition  he  filed  in  state  court  and  the  First  Amended  Complaint that  he  seeks  leave  to  file  in  this  court  allege  that  "[d]efendants violated ERISA and breach[ed] their contract with [him] by selling [his]  AXP  shares  without  any  notification  or  consent,  and  by denying  [his]  rights  to  a  distribution  of  his  Plan  assets  in  a method  that  would  preserve  his  cost  basis."[6]   Since  plaintiff's

---

[6]Plaintiff's Response to Defendants' Motion to Dismiss Under FRCP 12(b)(6), Entry No. 12, p. 5.

argument demonstrates that the contract he alleges defendants breached is an ERISA-governed plan, the court concludes that plaintiff's breach of contract claim is completely preempted by ERISA because 29 U.S.C. § 1132(a)(1)(B) provides the exclusive civil remedy to enforce a beneficiary's rights under the terms of an ERISA-governed plan. <u>Id.</u> (citing <u>Arana v. Ochsner Health Plan</u>, 338 F.3d 433, 438 (5th Cir. 2003) (en banc), <u>cert. denied</u>, 124 S.Ct. 1044 (2004) (a claim "to recover benefits . . . under the terms of [a] plan" or a claim "to enforce . . . rights under the terms of [a] plan" is completely preempted under Section 1132(a)). <u>See also</u> <u>Anderson v. Elec. Data Systems Corp.</u>, 11 F.3d 1311, 1315 (5th Cir.), <u>cert. denied</u>, 115 S.Ct. 55 (1994) (breach of contract is a state law claim that is completely preempted by ERISA). Accordingly, defendants' motion to dismiss plaintiff's breach of contract claim will be granted.

### III.  <u>Motion for Leave to Amend</u>

Citing Federal Rule of Civil Procedure 15, plaintiff seeks leave to file a First Amended Complaint to allege ERISA-based claims for benefits and breach of fiduciary duty. Defendants argue that "[e]ven if the [c]ourt allows [p]laintiff to file his First Amended [Complaint], his claims will continue to be fatally flawed and should be dismissed."[7]

---

[7]Defendants' Opposition to Plaintiff's Motion for Leave to Amend, Docket Entry No. 14, p. 1.

## A.   Standard of Review

Federal Rule of Civil Procedure 15(a) permits amendment of a pleading after a responsive pleading has been served with leave of court.  However, the court should freely give leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a).  Rule 15 requires a trial court "to grant leave to amend 'freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'" Smith v. EMC Corp., 393 F.3d 590, 595 (5th Cir. 2004) (quoting Lyn-Lea Travel Corp. v. American Airlines, 283 F.3d 282, 286 (5th Cir.), cert. denied, 283 F.3d 282 (2002)).  A district court must possess a "substantial reason" to deny a request for leave to amend.  Id. (quoting Jamieson v. Shaw, 772 F.2d 1205, 1208 (5th Cir. 1985)).  Decisions on motions to amend are "entrusted to the sound discretion of the district court."  Smith, 393 F.3d at 595 (quoting Quintanilla v. Texas Television, Inc., 139 F.3d 494, 499 (5th Cir. 1998)).  See also Foman v. Davis, 83 S.Ct. 227, 230 (1962).

Among the acceptable justifications for denying leave to amend are "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Jamieson, 772 F.2d at 1208.  See also Foman, 83 S.Ct. at 230.  When futility is advanced as the reason for denying an amendment to a

complaint, the court is usually asked to deny leave to amend because the theory presented in the amendment lacks legal foundation or because the theory has been adequately presented in a prior version of the complaint. <u>Jamieson</u>, 772 F.2d at 1208 (citing <u>Pan-Islamic Trade Corp. v. Exxon</u>, 632 F.2d 539, 546 (5th Cir. 1980), <u>cert. denied</u>, 102 S.Ct. 427 (1981)). Consequently, review of such an argument tends to blur the distinction between analysis of the procedural context under Rule 15(a) and analysis of the sufficiency of the complaint under Rule 12(b)(6). <u>Id.</u> at 1208-1209.

**B.    Analysis**

Defendants contend that plaintiff's ERISA claims are fatally flawed and should be dismissed because he seeks "recovery of compensatory damages that are not available under ERISA."[8] Plaintiff responds that he has stated claims upon which relief may be granted under 29 U.S.C. § 1132(a)(1)(B) because he seeks the benefits to which he is entitled under the terms of the Plan, receivable either in money or in kind by reinstatement of his cost basis.[9]

---

[8]<u>Id.</u> at pp. 1-2.

[9]See Plaintiff's Sir [sic] Reply to Defendants' Reply to Plaintiff's Response to Defendants' Motion to Dismiss Under FRCP 12(b)(6), Docket Entry No. 15, p. 3.

In a paragraph titled "Damages" plaintiff alleges that

[a]s a result of defendants' breach of contract and violations of ERISA, [plaintiff] has sustained direct monetary damages. Specifically, as a result of the Defendants' sale of [plaintiff's] AXP shares within the Plan, [plaintiff] has lost approximately $40,000 in profits on the stock price alone, and has become subject to penalties and higher taxes on his investments in the sum of approximately $9,000. These damages are increasing with time. [Plaintiff] seeks to recover his monetary damages or a reinstatement of his positions in American Express stock at [his] original basis.[10]

To be recoverable under ERISA, plaintiff's loss of investment earnings or "lost profits" and increased tax liability must be either (1) a benefit due under the plan or (2) compensable as other equitable relief. See 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3)(B).

1.   Benefit Due Under the Plan

Section 1132(a)(1)(B) provides

(a) Persons empowered to bring a civil action.  A civil action may be brought--

(1) by a participant or beneficiary--

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B).  Citing Musmeci v. Schwegmann Giant Super Markets, Inc., 332 F.3d 339, 348-349 (5th Cir. 2003), cert. denied, 124 S.Ct. 1078 (2004), plaintiff contends that a

---

[10]Plaintiff's First Amended Complaint, Docket Entry No. 11, p. 8, ¶ 18.

contractually-based calculation of money damages is an appropriate
remedy for his claim for benefits due under the Plan.[11]

In <u>Musmeci</u> the plaintiffs were retirees from a grocery store
who brought suit under § 1132(a)(1)(B) following termination of a
grocery voucher program that was a benefit of their pension plan.
Asserting that § 1132(a)(1)(B) allows only the recovery of "plan
benefits," defendants argued that ERISA allowed the plaintiffs to
recover only grocery vouchers (which were then worthless) and did
not allow them to recover the grocery vouchers' cash equivalent.
On appeal from the district court's award of money damages, the
Fifth Circuit held that

> [w]e see no good reason why the district court was
> prohibited from making a monetary award.  The classic
> measure of contract damages is the value of the thing of
> which the plaintiff has been deprived by the breach.
> <u>Liberty Bank v. Talman Home Mortg. Corp.</u>, 877 F.2d 400,
> 406 (5th Cir. 1989).  We are satisfied that the same
> measure of damages, the value of the benefit denied, is
> the appropriate measure of damages in this case.
> Accordingly, monetary relief in the amount of the benefit
> denied is the appropriate remedy.

<u>Id.</u> at 349.

<u>Musmeci</u> does not seem to help plaintiff because it addressed
whether in-kind plan benefits that had been denied could be
measured in terms of money damages, but did not address the issue
apparently posed by plaintiff's complaint:  whether extra

---

[11]Plaintiff's Sir [sic] Reply to Defendants' Reply to
Plaintiff's Response to Defendants' Motion to Dismiss Under FRCP
12(b)(6), Docket Entry No. 15, pp. 2-3.

contractual damages are recoverable as plan benefits under 29
U.S.C. § 1132(a)(1)(B).  Although the Musmeci court saw no reason
why in-kind plan benefits could not be measured in monetary terms,
it expressly distinguished the claim before it from claims for
extra-contractual damages.  See id. (finding defendants' citation
to cases rejecting recovery of tort and punitive damages as
prohibited extra contractual remedies "not helpful" to question of
whether plaintiffs could receive money for denial of an in-kind
benefit).

In this circuit extra contractual damages are not recoverable
under ERISA's civil enforcement provisions.  See Medina v. Anthem
Life Insurance Co., 983 F.2d 29, 30 (5th Cir.), cert. denied, 114
S.Ct. 66 and 73 (1993) (refusing to find that § 1132(a)(1)(B)
allows extra contractual relief).  In Medina the district court
refused to allow the plaintiff to amend her claim for benefits
under § 1132(a)(1)(B) to add a claim for extra contractual and
punitive damages.  Id. at 31.  The Fifth Circuit observed that
"[t]he plain language of [§ 1132(a)] does not mention recovery of
extra contractual or punitive damages."  Id.  The Fifth Circuit
then considered whether ERISA's civil enforcement provisions would
nonetheless support an award of extra contractual damages.  The
court began its analysis with the Supreme Court's opinion in Pilot
Life Insurance Co. v. Dedeaux, 107 S.Ct. 1549, 1555 (1987), in
which the Court noted that the text of ERISA argues "strongly for

the conclusion that ERISA's civil enforcement remedies were intended to be exclusive." Id.  The Fifth Circuit then looked to the Supreme Court's opinion in Massachusetts Mutual Life Insurance Co. v. Russell, 105 S.Ct. 3085 (1985), in which the Court concluded that

> the carefully integrated civil enforcement provisions found in [§ 1132(a)] of the statute as finally enacted . . . provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.

Medina, 983 F.2d at 31 (quoting Russell, 105 S.Ct. at 3092). Although at issue in Russell was whether a plan fiduciary may be held liable for extra contractual or punitive damages under § 1132(a)(3), the Court looked to § 1132(a)(1)(B) for insight by analogy. Id. at 32 (citing Russell, 105 S.Ct. at 3092).  The Court found that in contrast to the repeatedly emphasized purpose of ERISA to protect contractually defined benefits, there is a stark absence -- both in the statute itself and in its legislative history -- of any reference to any intention to authorize the recovery of extra contractual damages. Id. (quoting Russell, 105 S.Ct. at 3092 ("there really is nothing at all in the statutory text to support the conclusion that the statute intended to give rise to a private right of action for compensatory or punitive relief")).

Based on the Supreme Court's observations in Russell and Pilot Life, the Fifth Circuit concluded in Medina that:

the [Supreme] Court felt that the statutory enforcement
scheme Congress crafted for ERISA in [§ 1132(a)] did not
include a private remedy for extra contractual and
punitive damages.  Without explicit instructions from
Congress, we are bound to the plain language of the
statute that limits suits to the terms of the plan at
issue, rather than arbitrarily extending its scope to
include suits for extra contractual and punitive damages.
The magistrate judge correctly refused to allow Medina to
amend her complaint to include a claim for extra
contractual and punitive damages under [§ 1132(a)(1)(B)].

983 F.2d at 32-33.  The Fifth Circuit has since applied the

reasoning that supported its holding in <u>Medina</u>, that extra

contractual damages are unavailable under § 502(a)(1)(B), to all of

§ 1132(a).  <u>See</u> <u>Nero v. Industrial Molding Corp.</u>, 167 F.3d 921, 931

(1999) (holding that plaintiff's claim for out-of-pocket expenses,

arising from defendant's violation of ERISA § 510 (29 U.S.C.

§ 1140) was not available under § 1132(a)(3)(B)).[12]

Extra contractual damages are "[d]amages that would give a

beneficiary more than he or she is entitled to receive under the

strict terms of the [ERISA-governed] plan." <u>Id.</u> (quoting <u>Corcoran</u>

<u>v. United HealthCare, Inc.</u>, 965 F.2d 1321, 1335 (5th Cir.), <u>cert.</u>

<u>denied</u>, 113 S.Ct. 812 (1992)).  Plaintiff has neither alleged nor

argued that gain in investment value or avoidance of increased tax

---

[12]Section 510 of ERISA provides:  "It shall be unlawful for any
person to discharge . . . a participant or beneficiary for
exercising any right to which he is entitled under the provision of
an employee benefit plan . . . or for the purpose of interfering
with the attainment of any right to which such participant may
become entitled under [an employee benefit plan] . . ." 29 U.S.C.
§ 1140.

liability is a specific benefit due under the Plan.  Nor has plaintiff alleged that the defendants failed to sell his AXP stock for market price, or that they failed to credit his new account for the correct amount of sale proceeds.  Instead, plaintiff alleges that defendants' failure to provide him advance notice of the Amex Fund's elimination caused him to lose profits from the rise in stock price that occurred after the sale, and also caused him to suffer adverse tax consequences.  While the ability to accrue tax deferred increases in investment value serves as an incentive to participate in ERISA-governed plans, plaintiff has not cited the court to any case that has identified either this incentive or the right to receive notice that a particular investment fund would be eliminated as a benefit due under an ERISA plan.  See Fraser v. Lintas: Campbell-Ewald, 56 F.3d 722, 725-726 (6th Cir. 1995) (neither right to receive notice of a reduction in accrued benefits nor tax advantages forfeited because of the fiduciary's failure to provide notice of a rollover option constitute a recoverable "benefit due" under § 1132(a)(1)(B)); Glencoe v. Teachers Insurance and Annuity Association of America, 69 F.Supp.2d 849, 853 (S.D. W. Va. 1999) ("avoiding tax liability and obtaining the benefit of tax-deferred growth income is not a specific benefit due under the plan"), aff'd 232 F.3d 887 (4th Cir. 2000) (per curiam).

Nevertheless, since neither the plaintiff nor the defendants have provided the court with any Plan documents, the court is

reluctant to conclude at the pleading stage of this case that amendment of plaintiff's complaint to add an ERISA claim for benefits would be futile because plaintiff can prove no set of facts in support of that claim that would entitle him to relief. See Conley, 78 S.Ct. at 102. Accordingly, although the court is skeptical that plaintiff will be able to show entitlement to relief on a claim for benefits due under the Plan, the court concludes that plaintiff's motion for leave to amend his complaint to add a claim for ERISA benefits should be granted.

2. Breach of Fiduciary Duty

ERISA § 1132(a)(3) authorizes suits by a participant, beneficiary, or fiduciary "to obtain other appropriate equitable relief." 29 U.S.C. § 1132(a)(3). See Varity Corp. v. Howe, 116 S.Ct. 1065 (1996). In Varity the Supreme Court held that an ERISA plaintiff may bring an individual action for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) for "injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." Varity, 116 S.Ct. at 1078. See also Tolson v. Avondale Industries, Inc., 141 F.3d 604, 610 (5th Cir. 1998) (Varity "interpreted § 1132(a)(3) to allow plaintiffs to sue for breach of fiduciary duty for personal recovery when no other appropriate equitable relief is available").[13]

---

[13]Although breach of fiduciary duty claims may also be brought under 29 U.S.C. § 1132(a)(2), such claims may only be brought on behalf of a plan and not on behalf on an individual claimant. (continued...)

Admitting that defendants had the authority to sell his AXP stock, plaintiff alleges that

> the elimination of AXP shares and of [his] shares without notice to [him] was a breach of fiduciary duty which resulted from a conflict of interest. The same conflict of interest overshadowed the Defendants' handling of [his] claims for relief in the administrative process which led to a ruling which was arbitrary and capricious, or, at a minimum, an abuse of discretion, denying rights and benefits which should be due to him under the Plan and under ERISA.[14]

(a)  Lost Profits and Adverse Tax Consequences

Citing <u>Mertens v. Hewitt Associates</u>, 113 S.Ct. 2063 (1993), defendants argue that lost profits and other similar forms of compensatory damages are not recoverable in private actions for breach of fiduciary duty brought under 29 U.S.C. § 1132(a)(3) because compensatory damages are legal, not equitable, relief.[15] In <u>Mertens</u> the Supreme Court refused to read the ability to recover "equitable relief" under § 1132(a)(3) as authorization to recover money damages.  <u>Id.</u> at 2068.  Instead, the Court held that the term

---

[13](...continued)
Since plaintiff seeks relief solely for himself and not for the Plan, § 1132(a)(3) is the only section of ERISA under which such a claim is cognizable.  <u>See</u> <u>Tolson</u>, 141 F.3d at 610 ("Section 1132(a)(2) allows a beneficiary to bring a standard breach of fiduciary duty suit for the benefit of the subject plan.").

[14]Plaintiff's First Amended Complaint, Docket Entry No. 11, p. 8, ¶ 17.

[15]Defendants' Opposition to Plaintiff's Motion for Leave to Amend, Docket Entry No. 14, p. 2.

-17-

"equitable relief" in 29 U.S.C. § 1132(a)(3) must refer only to "those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not to compensatory damages)." Id. See Rogers v. Hartford Life & Accident Ins. Co., 167 F.3d 933, 944 (5th Cir. 1999) (Mertens "firmly closed" the door to recovery of compensatory damages under § 1132(a)(3)).

Plaintiff does not dispute defendants' characterization of his claims for lost profits and adverse tax consequences as claims for compensatory damages, or defendants' assertion that compensatory damages are unavailable for breach of fiduciary duty claims. Since the Supreme Court's holding in Mertens precludes plaintiff from recovering compensatory damages for a breach of fiduciary duty claim brought under § 1132(a)(3), and since plaintiff does not dispute that the damages he seeks for lost profits and adverse tax consequences are compensatory in nature, the court concludes that plaintiff's motion for leave to amend his complaint to add a claim for breach of fiduciary duty seeking lost profits and adverse tax consequences should be denied as a futile attempt to state a claim for which relief may not be granted.

(b)  Reinstatement of Cost Basis in AXP Stock

Citing Great-West Life & Annuity Insurance Co. v. Knudson, 122 S.Ct. 708, 716 (2002), defendants argue that plaintiff is precluded

from receiving an order for reinstatement of his position in AXP stock for a claim brought under 29 U.S.C. § 1132(a)(3) because although characterized as a claim for equitable relief, plaintiff's claim for reinstatement is actually a claim for compensatory damages.[16]   Following Mertens some courts allowed "make-whole" damages under § 1132(a)(3) on the theory that claims for breach of fiduciary duty are claims that have always been within the exclusive jurisdiction of equity.  However, in Great-West the Court reaffirmed its holding in Mertens stating that

> [a]s we explained in Mertens, "'[e]quitable relief' must mean something less than all relief."  Thus, in Mertens we rejected a reading of the statute that would extend the relief obtainable under [§1132(a)(3)] to whatever relief a court of equity is empowered to provide in the particular case at issue (which could include legal remedies that would otherwise be beyond the scope of the equity court's authority).  Such a reading, we said, would "limit the relief not at all" and "render the modifier ['equitable'] superfluous."  Instead, we held that the term "equitable relief" in [§1132(a)(3)] must refer to "those categories of relief that were typically available in equity. . ."

Great-West, 122 S.Ct. at 712.  Although the petitioners in Great-West struggled to characterize the relief that they sought as "equitable" under the standard set by Mertens, the Court rejected each of their claims as an attempt to impose liability on respondents "for a contractual obligation to pay money -- relief that was not typically available in equity."  Id. at 712-713

---

[16]Id.

(quoting Wal-Mart Stores, Inc. v. Wells, 213 F.3d 398, 401 (7th Cir. 2000) ("Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty . . . And 'money damages' are, of course, the classic form of legal relief.")). In Great-West the Court rejected the following claims as attempts to recast claims for legal relief as claims for equitable relief:  (1) a claim to enjoin the respondents' failure to reimburse a plan; (2) a claim for restitution; and (3) a claim that deprivation of a remedy would be inconsistent with a primary purpose of ERISA.  See Great-West, 122 S.Ct. at 713-719. Since Great-West, "the relevant question is not whether a given type of case would have been brought in a court of equity, but whether a given type of relief was available in equity courts as a general rule." Rego v. Westvaco Corp., 319 F.3d 140, 144-46 (4th Cir. 2003).

Citing Helfrich v. PNC Bank, Ky., Inc., 267 F.3d 477, 481 (6th Cir. 2001), cert. denied, 122 S.Ct. 1298 (2002), defendants argue that plaintiff's plea for reinstatement of his position in AXP stock should not be treated as a plea for equitable relief but, instead, as a plea for legal relief.  In Helfrich the plaintiff brought suit under § 1132(a) seeking reinstatement of funds that he

lost because the administrator failed to follow his instructions to transfer more than $700,000 of his 401(k) plan assets into a different fund. Although the district court denied the defendants' motion to dismiss, the Sixth Circuit held that the plaintiffs' claim for reinstatement of lost profits and other benefits was not equitable or restitutionary in nature and, therefore, not recoverable under § 1132(a)(3).  Helfrich, 267 F.3d at 481.  The Sixth Circuit explained that

> ERISA does not permit plan beneficiaries to claim money damages from plan fiduciaries.  Confronted with this obstacle to recovery of his loss, Helfrich denominated his requested relief as "restitution" while measuring that relief with reference to his losses rather than PNC Bank's gains.  That measure is the hallmark of money damages.  Because the Supreme Court has specifically disallowed money damages as "appropriate equitable relief" under ERISA, the district court's decision to deny PNC Bank's motion to dismiss is REVERSED and this cause is REMANDED with instructions to dismiss this matter with prejudice.

Id. at 482-483.  See also Rego, 319 F.3d at 144-46 (4th Cir. 2003) (holding that plaintiff's claim for an order requiring defendants to issue stock in compensation for their breach of fiduciary duty to be claim for money damages that had been "squarely rejected" by the Supreme Court's decision in Great-West).

Since plaintiff admits that defendants had the authority to sell his AXP stock,[17] and the relief that he seeks is compensation for losses that he allegedly suffered as a result of the

_____

[17]Plaintiff's First Amended Complaint, Docket Entry No. 11, p. 7, ¶ 17.

defendants' failure to provide him notice that the Amex Fund would be eliminated, the court concludes that the relief plaintiff seeks is not equitable but, instead, legal. See Great West, 122 S.Ct. at 713 (defining non-equitable money damages as "compensation for loss resulting from the defendant's breach of a legal duty"). See also Farr v. U.S. West Communications, Inc., 151 F.3d 908, 916 (9th Cir. 1998) ("Plaintiffs may not recover their tax benefit losses under [§ 1132(a)(3)] despite the fact that conclusion leaves [p]laintiffs without a remedy for an alleged breach of fiduciary duty under ERISA."); Novak v. Andersen Corp., 962 F.2d 757, 761 (8th Cir. 1992), cert. denied, 113 S.Ct. 2928 (1993) (ERISA does not authorize relief for tax losses associated with employer's failure to give statutorily required notice of rollover option). Accordingly, the court concludes that plaintiff's motion for leave to amend his complaint to add a claim for breach of fiduciary duty seeking reinstatement of his cost basis in AXP stock should be denied as a futile attempt to state a claim for which relief may not be granted.

## IV.  Conclusions and Order

Because the court concludes that plaintiff's state law claim for breach of contract is completely preempted by ERISA, Defendants' Motion to Dismiss (Docket Entry No. 3) is **GRANTED**, and plaintiff's state law claim for breach of contract is **DISMISSED**.

For the reasons explained above, the court concludes that plaintiff should be allowed to amend his complaint to allege a claim for ERISA benefits, but should not be allowed to amend his claim to allege a claim for equitable relief arising from defendants' breach of fiduciary duty. Accordingly, Plaintiff's Motion for Leave to Amend (Docket Entry No. 13) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff has ten (10) days from the entry of this Memorandum Opinion and Order to file an amended complaint.

The initial pretrial and scheduling conference is rescheduled to August 19, 2005, at 2:00 p.m., in Court Room 9-B, 9th Floor, United States Courthouse, 515 Rusk Avenue, Houston, Texas. The joint discovery/case management plan will be filed by August 10, 2005.

**SIGNED** at Houston, Texas, on this 20th day of July, 2005.

SIM LAKE
UNITED STATES DISTRICT JUDGE